UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ELISSA ANDERSEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO. 2:19-cv-00378-TLS-SLC |
| ) | |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, *sued as Andrew Saul,* ) | |
| *Commissioner of the Social Security* ) | |
| *Administration,* ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

Plaintiff Elissa Andersen appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying her application under the Social Security Act (the "Act") for Supplemental Security Income ("SSI"). (ECF 1). The appeal was referred to the undersigned Magistrate Judge on November 21, 2019, by District Judge Theresa L. Springmann pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), Northern District of Indiana Local Rule 72-1(b), and this Court's General Order 2018-14A for the issuance of a Report and Recommendation. (ECF 9). Andersen filed her opening brief on January 30, 2020, and the Commissioner filed his response brief on February 25, 2020, as amended on April 8, 2020. (ECF 13-16). Andersen did not file a reply brief, and her time do so has now passed. N.D. Ind. L.R. 7-1(d)(3)(B). Therefore, the matter is ripe for ruling.

Because two of Andersen's four arguments have merit, I RECOMMEND that the Commissioner's decision be REVERSED and the case REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation. This Report and Recommendation is based on the following facts and principles of law.

## I.  FACTUAL AND PROCEDURAL HISTORY

Andersen applied for SSI in October 2015, alleging disability as of June 1, 2012, which she later amended to March 21, 2014.  (ECF 11 Administrative Record ("AR") 15, 36-37, 222).  Andersen's application was denied on initial consideration and on reconsideration.  (AR 102-30).  A hearing was held on April 26, 2018, before administrative law judge ("ALJ") Jeanette Schrand, at which Andersen, who was represented by counsel, and a vocational expert testified.  (AR 31-101).  On August 31, 2018, the ALJ rendered an unfavorable decision to Andersen, concluding that she was not disabled because despite the limitations caused by her impairments she could perform her past relevant work as a recruiter and a salesperson as these occupations were generally performed in the economy.  (AR 15-25).  The Appeals Council denied Andersen's request for review (AR 1-6), at which point the ALJ's decision became the final decision of the Commissioner.  *See* 20 C.F.R. § 416.1481.

Andersen filed a complaint with this Court on October 4, 2019, seeking relief from the Commissioner's final decision.  (ECF 3).  In this appeal, Andersen argues that:  (1) the ALJ erred when concluding that she did not meet or equal listing 1.04, disorders of the spine; (2) the physical residual functional capacity ("RFC") is not supported by substantial evidence, specifically as to her upper extremity problems and her obesity; (3) the ALJ erred by considering her mental impairments non-severe and failing to account for them in the RFC; and (4) the ALJ erred in concluding that she could perform her past relevant work, given that the work entailed a considerable amount of travel as she actually performed it.  (ECF 13 at 5-8).

At the time of the ALJ's decision, Andersen was forty-three years old (AR 222); had attended two years of college (AR 256); and had past work experience as a retail salesperson, a

2

physical therapy technician, and a recruiter (AR 90-91, 256). In filing her SSI application, Andersen alleged disability due to multiple spinal impairments, anxiety, and depression. (AR 255). Her spinal impairments arose from a work-related motor vehicle accident in June 2012. (AR 404). She weighed 300 pounds at the time of the hearing. (AR 39).

## II.  STANDARD OF REVIEW

Section 405(g) of the Act grants this Court "the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed only if it is not supported by substantial evidence or if the ALJ applied an erroneous legal standard. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court reviews the entire administrative record but does not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute its judgment for the Commissioner's. *Id.* Rather, if the findings of the Commissioner are supported by substantial evidence, they are conclusive. *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

3

### III.  ANALYSIS

*A.  The Law*

Under the Act, a claimant is entitled to SSI if she establishes that she "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 1382c(a)(3)(D).

The Commissioner evaluates disability claims pursuant to a five-step evaluation process, requiring consideration of the following issues, in sequence:  (1) whether the claimant is currently unemployed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment or combination of impairments meets or equals one of the impairments listed by the Commissioner, *see* 20 C.F.R. Part 404, Subpart P, App'x 1; (4) whether the claimant is unable to perform her past work; and (5) whether the claimant is incapable of performing work in the national economy.[1]  *See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted); 20 C.F.R. § 416.920.  An affirmative answer leads either to the next step or, on steps three and five, to a finding that the claimant is disabled.  *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (citation omitted).  A negative answer at any point other than step three stops the inquiry and leads to a finding that the claimant is not disabled.  *Id.*

---

[1] Before performing steps four and five, the ALJ must determine the claimant's RFC or what tasks the claimant can do despite her limitations.  20 C.F.R §§ 416.920(e), 416.945(a).  The RFC is then used during steps four and five to help determine what, if any, employment the claimant is capable of.  20 C.F.R. § 416.920(e).

4

(citation omitted). The burden of proof lies with the claimant at every step except the fifth, where it shifts to the Commissioner. *Clifford*, 227 F.3d at 868 (citation omitted).

### B. The Commissioner's Final Decision

On August 31, 2018, the ALJ issued the decision that ultimately became the Commissioner's final decision. (AR 15-25). At step one of the five-step analysis, the ALJ found that Andersen had not engaged in substantial gainful activity since her application date, October 5, 2015. (AR 17). At step two, the ALJ found that Andersen had the following severe impairments: degenerative disc disease of the cervical and lumbar spine and obesity. (*Id.*). At step three, the ALJ concluded that Andersen did not have an impairment or combination of impairments severe enough to meet or equal a listing. (AR 21).

Before proceeding to step four, the ALJ determined that Andersen's allegations were "not entirely consistent" with the medical evidence and other evidence of record. (AR 22). The ALJ assigned her the following RFC:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 416.967(b) except the claimant can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs. The claimant can occasionally balance, stoop, crouch, kneel, and crawl. For the [left], non-dominant upper extremity,[2] the claimant can frequently handle (i.e. gross manipulation) and frequently finger with the hand. Fingering is defined as fine manipulation of items no smaller than a paper clip. The claimant is limited to occasional exposure to wetness. The claimant is also limited to work that does not require d[r]iving a motor vehicle.

(AR 21). The ALJ found at step four that Andersen was capable of performing her past relevant

---

[2] The ALJ's decision actually reads "For the *right*, non-dominant upper extremity . . . ." (AR 21 (emphasis added)). However, it is obvious from the record that the ALJ's reference in the decision to the right upper extremity was merely a scrivener's error, as at the hearing Andersen testified that she is right-hand dominant (AR 45; *see also* AR 270), and the ALJ referred to the "*left* non-dominant upper extremity" throughout the series of hypotheticals posed to the vocational expert (AR 93, 95 (emphasis added)).

5

work as a recruiter and a salesperson as these occupations were generally performed. (AR 25). Accordingly, Andersen's application for SSI was denied. (*Id.*).

### C. Listing 1.04A

Andersen first challenges the ALJ's step-three finding that she did not meet or medically equal listing 1.04A, disorders of the spine.[3] Because the Commissioner's responsive argument and the ALJ's decision overlook a material piece of evidence relevant to listing 1.04A, the ALJ's step-three finding should be remanded to the Commissioner for further consideration.

"Under a theory of presumptive disability, a claimant is eligible for benefits if she has an impairment that meets or equals an impairment found in the Listing of Impairments." *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citing 20 C.F.R. § 404.1520(d); 20 C.F.R Part 404, Subpart P, App'x 1)). "The listings specify the criteria for impairments that are considered presumptively disabling." *Id.* (citing 20 C.F.R. § 404.1525(a)). To meet or equal a listed impairment, a claimant must satisfy *all* of the criteria of the listed impairment. *See Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006); *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). The claimant bears the burden of proving her condition meets or equals a listed impairment. *Ribaudo*, 458 F.3d at 583; *Maggard*, 167 F.3d at 380. Having said that, "an ALJ should mention the specific listings [she] is considering and [her] failure to do so, if combined with a 'perfunctory analysis,' may require a remand." *Ribaudo*, 458 F.3d at 583-84 (citing

---

[3] Andersen does not argue that the ALJ erred by concluding that she did not meet or equal listing 1.04B, spinal arachnoiditis, or 1.04C, lumbar spinal stenosis resulting in pseudoclaudication. (*See* ECF 13 at 3-4). "[A]rguments not raised in the opening brief are waived." *Perez v. Colvin*, No. 1:14-CV-179, 2015 WL 5692102, at *7 (N.D. Ind. Sept. 28, 2015) (citing *Citizens Against Ruining the Env't v. E.P.A*, 535 F.3d 670, 675 (7th Cir. 2008); *Young v. Colvin*, No. 1:13-cv-01602, 2015 WL 1190095, at *7 n.5 (S.D. Ind. Mar. 13, 2015)).

*Barnett*, 381 F.3d at 668; *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 786 (7th Cir. 2003)); *see also Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002).

> The criteria of listing 1.04A is as follows:
>
> 1.04  Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
>
> A.  Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Part 404, Subpart P, App'x 1, § 1.04.  Here, when considering listing 1.04A at step three, the ALJ stated:

> The claimant's degenerative disc disease fails to meet or medically equal Listing 1.04 (Disorders of the Spine).  The record fails to demonstrate a nerve root compression characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss and positive straight leg raising (Listing 1.04A).

(AR 21).

 Andersen argues that the record does indeed reveal evidence sufficient to meet listing 1.04A.  In support, she cites a laundry list of evidence that documents numbness and weakness in her legs, limited range of motion, and pain complaints to providers.  (ECF 13 at 6 (citing AR 354, 374, 37[8], 380, 408, 957, 963, 973, 988-89, 1037)).  The Commissioner responds that regardless of whether Andersen can satisfy the remaining criteria of listing 1.04A, none of the evidence reveals a positive straight-leg-raising test, which is an essential element of listing 1.04A.  (ECF 16 at 5).  As the ALJ noted, Andersen's straight-leg-raising test was negative bilaterally at her medical consultative examination by Dr. R. Jao in January 2016.  (AR 23

7

(citing AR 406)). In fact, Andersen's attorney seemed to concede at the hearing that the record lacked a positive straight-leg-raising test. (AR 40-41).

But the ALJ and the parties overlook more recent evidence of a positive straight-leg-raising test. Dr. Michael Spence, who is Board Certified in Physical Medicine and Rehabilitation, treated Andersen from October 2015 to March 2018. (*See* AR 933-1008, 1069-79). In March 2018, Dr. Spence assigned Andersen "an overall whole person impairment of 22% for her L4-5 spinal stenosis with right S1 radiculopathy and her C4-5 and C6-7 disc protrusions with pseudo-radicular symptoms." (AR 1079). In doing so, Dr. Spence stated, in relevant part: "[T]he claimant was found to be Grade Modifier 2 *with positive straight leg raising test*, with reproducible radicular pain at 35*-70* . . . ." (AR 1077 (emphasis added)). While "[j]udges are not like pigs, hunting for truffles buried in [the record,]" *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 702 (7th Cir. 2010) (alteration in original) (citation omitted), this evidence was noted when considering Andersen's argument (to be discussed *infra*) that the ALJ failed to adequately explain why she gave "little" weight to the permanent partial impairment ("PPI") rating assigned by Dr. Spence. (*See* ECF 13 at 7-8).

Because the Commissioner does not suggest that Andersen fails to satisfy the other criteria of listing 1.04A, the evidence of the positive straight-leg-raising test documented by Dr. Spence in March 2018 is critical to whether Andersen met listing 1.04A.[4] Accordingly, this case

---

[4] While the Commissioner argues that the opinions of Dr. J.V. Corcoran and Dr. M. Brill, the state agency physicians who reviewed her record in April and August 2016, respectively, bolster the ALJ's finding that Andersen's spinal impairments did not meet or equal listing 1.04A (ECF 14 at 6), these doctors did not have the opportunity to review Dr. Spence's opinion issued in March 2018, which reasonably could have changed their opinions. *See Moreno v. Berryhill*, 882 F.3d 722, 728 (7th Cir. 2018) ("An ALJ should not rely on an outdated assessment if later evidence containing new, significant medical diagnoses reasonably could have changed the reviewing physician's opinion.").

8

should be remanded so that the ALJ may consider this evidence, contacting Dr. Spence for further clarification, if needed, to ascertain whether such test occurred in both sitting and supine as required by listing 1.04A. *See Barnett*, 381 F.3d at 669 ("An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable." (citations omitted)).

### D. The Physical RFC

While a remand is necessary based on Andersen's first argument, I will address her remaining arguments as well for purposes of completeness. Andersen next argues that the physical RFC assigned by the ALJ is not supported by substantial evidence because the ALJ: (1) "did not factor in any upper extremity limitations"; (2) failed to adequately account for her "super obesity"; and (3) improperly afforded "little" weight to the PPI rating assigned by Dr. Spence. (ECF 13 at 6-7). After further scrutiny, these arguments do not require further attention upon remand.

The RFC is "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis," meaning eight hours a day, for five days a week. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (second emphasis omitted). That is, the "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." *Id.* at *1; *see also Young v. Barnhart*, 362 F.3d 995, 1000-01 (7th Cir. 2004); 20 C.F.R. § 416.945(a)(1).

> The [RFC] assessment is based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomatology, an individual's own statement of what he or she is able or unable to do, and many other factors that could help the adjudicator determine the most reasonable findings in light of all the evidence.

SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996); *see* 20 C.F.R. § 416.945(a)(3). When crafting the RFC, the ALJ need only include those limitations in the RFC "that [are] supported by the medical evidence and that the ALJ found to be credible." *McReynolds v. Berryhill*, 341 F. Supp. 3d 869, 883 (7th Cir. 2018) (citing *Outlaw v. Astrue*, 412 F. App'x 894, 898 (7th Cir. 2011)).

### 1. Upper Extremity Limitations

Andersen asserts that the ALJ "did not factor in any upper extremity limitations into her RFC assessment" but that argument mischaracterizes the ALJ's decision. (ECF 13 at 6). As stated earlier, the ALJ included the following upper extremity limitations in the RFC: "For the [left], non-dominant upper extremity,[5] the claimant can frequently handle (i.e., gross manipulation) and frequently finger with the hand. Fingering is defined as fine manipulation of times no smaller than a paper clip." (AR 21). Given these assigned restrictions, Andersen's argument fails at the outset with respect to her left, non-dominant upper extremity.

Setting the mischaracterization aside, Andersen contends that the ALJ failed to account in the RFC for her testimony that she experienced numbness and weakness in both arms, and that the objective testing revealed the grip strength in her left hand was "significantly diminished" as compared to her right hand. (ECF 13 at 4 (citing AR 406)). But as already explained, the ALJ *did* account for Andersen's complaints of numbness and tingling in her left upper extremity, which represent the majority of her upper extremity complaints of record. (*See, e.g.*, AR 125, 933-35, 993-1007). And while Andersen occasionally complained of numbness and tingling in

---

[5] See footnote 2 *supra*. It is apparent from the parties' arguments that neither Andersen nor the Commissioner detected the ALJ's scrivener's error. (*See* ECF 13 at 6; ECF 14 at 8-10).

both arms, she still consistently had "5/5" or "5-/5" strength in both upper extremities. (*See, e.g.*, AR 935, 967-72, 995). In fact, Andersen does not point to *any* upper extremity muscle testing score of record that is less than "5-/5." (*Compare, e.g.*, AR 356, 406, 935, 958, 995, 1071).

Andersen also cites to Dr. Jao's dynamometer testing that documented 26.3 kilograms of force in her right hand and 14.5 kilograms of force in her left, contending that the ALJ failed to consider that her left grip strength was "significantly diminished " as compared to her right. (ECF 13 at 6). But as already explained, the ALJ incorporated manipulative and fingering limitations with respect to Andersen's left upper extremity in the RFC. Furthermore, despite the variance in dynamometer readings bilaterally, Dr. Jao found that Andersen had "[n]ormal grip strength at 5/5 bilaterally with good fine finger manipulative abilities, including the ability to button, zip, and pick up coins. Coordination is normal." (AR 407). As such, Dr. Jao did not suggest that Andersen's reduced grip strength in her left, non-dominant hand affected her functional abilities.

Again, Andersen does not point to any medical provider documentation that observed coordination or fingering deficits at her clinical examinations. (*Compare, e.g.*, AR 407). Nor does Andersen cite any medical source opinion that assigned her manipulative or fingering limitations. (*Compare, e.g.*, AR 125, 407). "It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove her claim of disability." *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) (citing 20 C.F.R. § 404.1512(c); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)); *see Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) ("[T]he primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." (citing 20 C.F.R. § 416.912(c)). On the record

11

presented, Andersen fails to carry her burden of establishing upper extremity limitations of greater functional severity than accounted for in the RFC.

### 2. Obesity

Andersen also contends that the ALJ failed to discuss how her super obesity (a body mass index greater than fifty) affected her physical RFC. (ECF 13 at 7-8). Contrary to Andersen's assertion, the ALJ adequately addressed Andersen's obesity when assigning the RFC.

The ALJ began by discussing Andersen's obesity when considering the listings at step three, concluding that there was "no indication [her] obesity, alone or in combination with any other impairments, medically meets or equals the criteria of any listed impairment." (AR 21). The ALJ then returned to Andersen's obesity when discussing her symptom testimony and the medical evidence, explaining that "the [RFC] accommodates the claimant's obesity by limiting the claimant to light work and providing postural limitations as the claimant's obesity can affect her ability to stand and perform postural activities." (AR 23). Thus, contrary to Andersen's assertion, the ALJ duly considered Andersen's obesity and the medical evidence related thereto, and then explained how she accommodated its functional effects in the RFC. Andersen has not pointed to any evidence of record to show that her obesity limited her more severely than as found by the ALJ in the RFC. Therefore, Andersen's second challenge to the physical RFC is unpersuasive as well.

### 3. The PPI Rating Assigned by Dr. Spence

Additionally, Andersen contends that the ALJ failed to adequately discuss why she gave "little" weight to the PPI rating assigned by Dr. Spence, one of her treating providers. (ECF 13

12

at 7-8).  As explained earlier, in March 2018 Dr. Spence assigned Andersen "an overall whole person impairment of 22% for her L4-5 spinal stenosis with right S1 radiculopathy and her C4-5 and C6-7 disc protrusions with pseudo-radicular symptoms."  (AR 1079).

When discounting Dr. Spence's opinion, the ALJ stated:  "Michael Spence, M.D., one of the claimant's treatment providers, opined that the claimant has a 22% overall whole person impairment for her spinal stenosis and cervical spine impairment.  Little weight is given to this opinion, as the determination of disability is an issue reserved for the Commissioner."  (AR 24 (citations omitted)).  Though the ALJ could have better explained her reasoning for assigning the PPI rating little weight, she did not improperly ignore Dr. Spence's opinion.  *Cf. Conaway v. Astrue*, No. CIV-11-54-SPS, 2012 WL 1069055, at *4 (E.D. Okla. Mar. 29, 2012) ("While the ALJ was not required to adopt these findings regarding impairment ratings, he should not have simply ignored them, because they contradicted the ALJ's findings." (citations omitted)).

A district court facing a similar argument explained:

> [T]he American Medical Association Guides is a method of assessing impairment and disability completely different than the approach set forth in [the Social Security Administration's] regulations.  For example, while the AMA Guides define disability as 'activity limitations and/or participation restrictions in an individual with a health condition, disorder, or disease,' the Social Security Act defines disability as the 'inability to engage in any substania[l] gainful activity by reason of any medically determinable physical or mental impairment . . .'  42 U.S.C. § 423(d)(1)(A).  A diagnosis or a showing of a deviation from purely medical standards of bodily imperfection or normality is insufficient to establish disability; 'instead, the claimant must show the effects of the impairment on her ability to work.' *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005).  Thus, although Dr. Hatch found Plaintiff to have a permanent injury rating of 4%, it does not follow that the ALJ was required to include additional limitations in his RFC finding.

*Weaver v. Colvin*, No. 6:15-cv-1486-Orl-DNF, 2017 WL 677666, at *5 (M.D. Fla. Feb. 21, 2017).  Here too, while Dr. Spence assigned Andersen the PPI rating, he did not assign her any

13

specific work-related limitations that the ALJ failed to consider.  Ultimately, as the ALJ observed, the determination of disability is an issue reserved to the Commissioner.  *See Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013); 20 C.F.R. § 416.927(e)(2).  Consequently, the ALJ's decision to assign "little" weight to the PPI rating by Dr. Spence is reasonable and does not serve as grounds to remand the physical RFC.

### E.  The Mental RFC

Next, Andersen argues that the ALJ erred by finding that her mental impairments were non-severe and failing to include any mental limitations in the RFC.  (ECF 13 at 6-7).  Because the ALJ's reasoning cannot be traced with respect to her consideration of Andersen's mental impairments, a remand is also necessary to reconsider Andersen's mental RFC.

The medical evidence reveals that Andersen began taking anti-anxiety medication on or about 2013 and anti-depressant medication in January 2015.  (AR 658).  Her depression was described as "stable" by her primary care provider in July 2015.  (AR 108).  On or about December 2015, Andersen took herself off of her anti-depressants.  (AR 666).  In January 2016, Andersen's diagnosis was documented as a major depressive disorder, single episode, mild.  (AR 662).  She attempted to commit suicide in February 2016 and was hospitalized.  (AR 662, 666).  She had lost interest in everything and stayed in bed for two to three days at a time, rarely leaving home.  (AR 662).  In February 2016, Andersen's diagnosis was documented as major depression, recurrent, moderate.  (AR 911, 931).  At a clinical examination on April 22, 2016, Andersen's diagnoses were a major depressive disorder, recurrent, mild; and an anxiety disorder.  (AR 916).  She reported having "mood swings," with some good days and some days where she was angry, upset, and depressed.  (*Id.*).  She told the examiner that she had experienced these issues for years but that they were worsening.  (*Id.*).  A mental status examination was

14

unremarkable other than anxiety "off and on"; she denied any suicidal ideation. (AR 917). The doctor adjusted her medications. (*Id.*).

In considering Andersen's mental impairments at step two, the ALJ found that her depression did not cause more than a "minimal" limitation in her ability to perform basic mental work and concluded that it was "nonsevere." (AR 18). But "[a] failure to fully consider the impact of non-severe impairments requires reversal." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) (citation omitted)); *see Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) ("[T]he ALJ needed to consider the aggregate effect of [the claimant's] entire constellation of ailments—including those impairments that in isolation are not severe." (citations omitted)).

Here, the ALJ failed to mention Andersen's mental impairments after step two and did not include any mental limitations in the RFC. (*See* AR 20-25); *see McMillion v. Berryhill*, No. 2:16-CV-77-PRC, 2017 WL 526514, at *8 (N.D. Ind. Feb. 8, 2017) (remanding where the ALJ failed to discuss the non-severe mental limitations in the context of formulating the RFC); *Badger v. Colvin*, No. 2:15-cv-00392-JMS-MJD, 2016 WL 3476368, at *5-6 (S.D. Ind. June 27, 2016) (same). The ALJ's failure to address Andersen's mental impairments, even if non-severe, when assigning the RFC must be remedied upon remand. *Compare Rice v. Berryhill*, No. 17 C 1193, 2018 WL 2049931, at *5 (N.D. Ill. May 2, 2018) (finding that the ALJ's step-two determination that the claimant's major depression was non-severe was not a harmless screening error because the ALJ did not include any mental limitations in the RFC), *with Loftis v. Berryhill*, No. 15 C 10453, 2017 WL 2311214, at *2 n.1 (N.D. Ill. May 26, 2017) (finding that the ALJ's step-two determination that the claimant's major depression was non-severe was harmless, because the ALJ went on to consider the combined impact of the claimant's severe and non-severe impairments).

15

Furthermore, in concluding that Andersen's mental impairment was non-severe, the ALJ gave "considerable" weight to the opinions of Kari Kennedy, Psy.D., and William Shipley, Ph.D., the state agency psychologists who reviewed Andersen's record in April and August 2016, respectively. (AR 19 (citing AR 108, 122-23)). These doctors found that Andersen had only mild mental symptoms, was described as "stable" at clinical visits, and that her daily activities were limited primarily by her physical impairments. (AR 108, 122-23). Having said that, the ALJ assigned even more weight—that is, "great" weight—to the opinion of Kathryn T. Huls, Psy.D., who examined Andersen at the request of the state agency in January 2016. (AR 19). Dr. Huls observed that Andersen complained of irritability, tearfulness, and anhedonia; and diagnosed her with a major depressive disorder, single episode, mild. (AR 662). In relevant part, Dr. Huls concluded:

> Mrs. Andersen's ability to learn, remember and comprehend simple instructions appears adequate. Her ability to attend, concentrate and complete simple tasks is likely to be mildly impaired due to concentration difficulties / side effects from pain medication. Mrs. Andersen's ability to interact with coworkers, supervisors and the public in typical work settings is likely to be fair. Mrs. Andersen's ability to handle routine changes within the workplace is likely to be adequate.

(*Id.*).

While Andersen does not identify what specific mental limitations should have been included in the RFC (ECF 13 at 6-7), presumably she believes that the ALJ should have included the limitations opined by Dr. Huls, to which the ALJ assigned "great" weight. (AR 19). Indeed, the ALJ's reasoning cannot be traced with respect to, on the one hand, her assigning "great" weight to Dr. Huls's opinion that described various mental limitations, including an ability to perform "simple" work; and on the other hand, her crafting an RFC that included *no* mental limitations. *See Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995) ("An ALJ . . . must articulate, at some minimum level, [her] analysis of the evidence to allow the appellate court to trace the

path of [her] reasoning."). This is particularly problematic because the vocational expert's testimony reflects that the mental limitations opined by Dr. Huls were inconsistent with Andersen's past work as a recruiter, which was skilled, and salesperson, which was semi-skilled. (AR 97; *see* AR 24).

Though the ALJ does not discuss this in her decision, she did pose an alternative hypothetical to the vocational expert, including the additional limitations of "simple and routine tasks and . . . only . . . occasional interaction with the public." (AR 96). The ALJ responded that the hypothetical individual could not perform Andersen's past work but could perform the jobs of addresser, document preparer, and call-out operator, which were all unskilled occupations. (AR 94, 96). But this testimony still fails to bridge the gap in the ALJ's reasoning with respect to the mental RFC. This is because Dr. Huls opined that Andersen had a "fair" ability to interact not only with the public, but also with coworkers and supervisors. (AR 662). The alternative hypothetical, however, posed only limitations with respect to the public, not coworkers or supervisors. (AR 96). Similarly, the alternative hypothetical did not include Dr. Huls's finding that Andersen had "mild" limitations in attending to, concentrating on, and completing simple tasks. (AR 662). Given these omissions, the alternative hypothetical posed by the ALJ falls short of rendering the gap in her reasoning as mere "harmless error." *See generally Shramek v. Apfel*, 226 F.3d 809, 814 (7th Cir. 2000) (explaining that harmless errors are those that do not ultimately impact the outcome of the determination).

In sum, the ALJ failed to build an accurate and logical bridge from Dr. Huls's opinion—to which the ALJ assigned "great" weight—to the RFC that included no mental limitations. Nor did the alternative hypothetical posed by the ALJ to the vocational expert sufficiently remedy this gap  Consequently, the case should also be remanded for purposes of revisiting Dr. Huls's opinion and the mental RFC.

17

*F. The Step-Four Finding*

Finally, Andersen challenges the ALJ's step-four finding in which the ALJ concluded that she could perform her past relevant work as a recruiter and a salesperson as these occupations are generally performed. Andersen contends that the ALJ erred by "fail[ing] to include a reference that [she] was restricted from these jobs as [she actually] performed [them]. . . ." (ECF 13 at 8). Andersen explains that both of these positions, as she performed them, "entailed considerable travel from county to county," which is inconsistent with the assigned RFC that precluded her from driving a motor vehicle.[6] (*Id.*).

At step four, the ALJ must determine whether a claimant can perform her past relevant work given her assigned RFC.[7] 20 C.F.R. § 416.960(b)(2). A claimant must be found "not disabled" if she retains the RFC to perform either: "1. The actual functional demands and job duties of a particular past job; *or* 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy." *Wolfe v. Shalala*, 997 F.2d 321, 323 (7th Cir. 1993) (citations omitted); *see also* 20 C.F.R. § 416.960(b)(2); SSR 82-61, 1982 WL 31387 (Jan. 1, 1982). "To assess a claimant's ability to continue working, the ALJ often relies on the testimony of vocational experts." *Krell v. Saul*, 931 F.3d 582, 584 (7th Cir. 2019).

At the hearing, the ALJ posed a series of hypothetical questions to the vocational expert. (AR 91-93). In the second hypothetical, the ALJ included a limitation to preclude the

---

[6] While Andersen's testimony at the hearing supports her assertion that her past job as a recruiter involved considerable driving (AR 52-53), her testimony about her past work as a salesperson at Target does not (AR 50-51). Specifically, Andersen testified: "Target was basic clerk work. I worked on a register, they utilized me to put back merchandise. . . . [I] worked the food counter." (AR 50). Thus, there is no support in the record that Andersen's past work as a salesperson required travel, which undercuts her argument from the outset.

[7] For purposes of a step-four analysis, past work experience is "relevant" when it was (a) done within the last 15 years; (b) lasted long enough for the claimant to learn to do it; and (c) was SGA. 20 C.F.R. § 416.965(a); *Lauer v. Bowen*, 818 F.2d 636, 639 (7th Cir. 1987).

18

hypothetical individual from driving a motor vehicle at work. (AR 93). The ALJ responded that the individual could perform Andersen's past work as a recruiter and salesperson as they are generally performed in the national economy. (*Id.*). Andersen did not challenge the vocational expert's testimony at the hearing with respect to the driving restriction and Andersen's past work as it is generally performed. (AR 99-100). "When no one questions the vocational expert's foundation or reasoning [at the hearing], an ALJ is entitled to accept the vocational expert's conclusion . . . ." *Donahue v. Barnhart*, 279 F.3d 441, 446 (7th Cir. 2002).

Contrary to Andersen's assertion, the ALJ was not required to explicitly state that Andersen could not perform her past relevant work as she actually performed it. The ALJ's statement that Andersen could perform her past relevant work as a recruiter and a salesperson *as it is generally performed in the economy* is sufficient. *See Hernandez v. Astrue*, 277 F. App'x 617, 625 (7th Cir. 2008) ("Hernandez also says that the ALJ was required to state explicitly in his opinion which of the two (as actually performed or as generally performed) he was finding Hernandez capable of. But it is perfectly clear from the ALJ's explicit reliance on the [vocational expert's] unambiguous testimony that the ALJ found Hernandez not disabled because she could still work as a produce sorter as she had actually performed the job in the past."). Consequently, the ALJ's step-four finding is adequately articulated and supported by substantial evidence.

In sum, a remand is necessary to: (1) reconsider whether Andersen's spinal impairments meet listing 1.04A in light of the positive straight-leg-raising test finding in Dr. Spence's opinion, which was overlooked by the ALJ; and (2) reconsider the mental RFC, particularly with respect to Dr. Huls's opinion.[8] Andersen's other arguments do not require further attention upon

---

[8] Andersen asks that the Court reverse the Commissioner's decision and award her full SSI benefits (ECF 13 at 9), but an award of benefits is "essentially a factual finding best left for the [Commissioner] to address in the

remand.

## IV.  CONCLUSION

For the foregoing reasons, I RECOMMEND that the Commissioner's final decision be REVERSED, and the case REMANDED to the Commissioner for further proceedings in accordance with this Report and Recommendation.  The Clerk is directed to send a copy of this Report and Recommendation to counsel for the parties.  NOTICE IS HEREBY GIVEN that within fourteen days after being served with a copy of this recommended disposition a party may serve and file specific, written objections to the proposed findings and/or recommendations.  Fed. R. Civ. P. 72(b).  FAILURE TO FILE OBJECTIONS WITHIN THE SPECIFIED TIME WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.  *See generally Thomas v. Arn*, 474 U.S. 140 (1985); *Lerro v. Quaker Oats Co.*, 84 F.3d 239, 241-42 (7th Cir. 1996).

Entered this 16th day of July 2020.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

---

first instance, unless the record can yield but one supportable conclusion." *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993); *see also Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005); *Rohan v. Barnhart*, 306 F. Supp. 2d 756, 770 (N.D. Ill. 2004); *see generally Burroughs v. Massanari*, 156 F. Supp. 2d 1350, 1367-68 (N.D. Ga. 2001) (articulating that the court may award disability benefits if "the [Commissioner] has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability *without any doubt*") (alteration in original) (emphasis added).  Here, the record does not yield but on supportable conclusion, as there are additional factual findings to be determined with respect to listing 1.04A and the mental RFC.